

FILED

SEP - 4 2007

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re: | ) |
| | ) |
| MICHAEL HAT, dba MICHAEL HAT FARMING COMPANY, | ) Case No. 04-32497-B-11 |
| | ) |
| Debtor(s). | ) |
| ——————————————— | ) **POSTED ON WEB SITE** |
| | ) |
| JOHN VAN CUREN, CHAPTER 11 TRUSTEE, | ) |
| | ) |
| Plaintiff, | ) Adv. No. 05-2506-B ✓ |
| | ) |
| vs. | ) |
| | ) D.C. No.   JND-1 |
| THE BANK OF THE WEST, as | )                 GSMD-1 |
| successor in interest to | )                 GSMD-2 ✓ |
| United California Bank, | ) |
| formerly known as Sanwa Bank | ) |
| California, a California | ) Submitted June 19, 2007 |
| Corporation, | ) |
| | ) |
| Respondent(s). | ) |
| ——————————————— | ) |
| | ) |
| AND RELATED COUNTERCLAIM | ) |
| | ) |
| ——————————————— | ) |

## MEMORANDUM DECISION

In Docket Control Number JND-1 ("Bank Motion to Reconsider"), moving party, The Bank of the West ("Bank"), asks the court to reconsider its order entered December 29, 2006 (the "First Bank SJ Order") (Adv. Dkt. 124) denying Bank's countermotion for summary judgment ("First Bank SJ Request"), Docket Control Number GSMD-1, Adv. Dkt. 53.  Plaintiff John Van

231

Curen ("Trustee") opposes the Bank Motion to Reconsider. For the reasons stated herein, the Bank Motion to Reconsider is granted. The First Bank SJ Order is vacated. On reconsideration, the First Bank SJ Request is granted in part in favor of the non-moving party, Trustee, and denied in part. Summary judgment is denied. The court grants summary adjudication to Trustee on the issue of perfection of Bank's security interest in the Trailers, as hereinafter defined, on July 20, 2001. Except to the foregoing extent, the First Bank SJ Request is denied.

In Docket Control Number GSMD-2 (hereinafter defined as the Second Trustee SJ Request), Trustee seeks partial summary judgment on his first claim for relief. Bank opposes. For the reasons stated herein, the Second Trustee SJ Request, is granted in part. Pursuant to Federal Rule of Bankruptcy Procedure ("Fed.R.Bankr.P.") 7056(d), incorporating Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 56, Trustee is entitled to summary adjudication on the issue of perfection of Bank's security interest in the Trailers, as hereinafter defined, on July 20, 2001. Except to the foregoing extent, the Second Trustee SJ Request is denied.

On January 18, 2007, Bank filed the Bank Motion to Reconsider. On February 7, 2007, Trustee filed opposition to the Bank Motion to Reconsider and also filed the present countermotion, the Second Trustee SJ Request. After three continued hearings, the submission of a stipulated statement of facts (Adv. Dkt. 194) (the "Stipulated Facts"), and supplemental

briefing, the court held final hearings in Sacramento, California on June 19, 2007.  Appearances were noted on the record.  At the conclusion of the hearings, the Bank Motion to Reconsider and the Second Trustee SJ Request were taken under submission.

The Bank Motion to Reconsider, the First Bank SJ Request and the Second Trustee SJ Request are core proceedings, and the court has jurisdiction all matters.  28 U.S.C. §§ 1334 and 157. Venue is proper in this court under 28 U.S.C. § 1409.  There is no dispute concerning jurisdiction, venue or core status.

The following constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

**PROCEDURAL HISTORY**

On July 20, 2001 (the "Petition Date"), Michael Hat, dba Michael Hat Farming Company ("Debtor") commenced the above-captioned voluntary Chapter 11 case.  Debtor acted as debtor-in-possession until April 11, 2003, when Trustee was appointed. Trustee obtained confirmation of his second amended plan of liquidation on August 24, 2005.

On December 12, 2005, the Trustee filed the instant adversary proceeding.  An amended complaint was filed on December 29, 2005, setting forth two claims for relief.  The first claim for relief seeks to avoid Bank's interest in 118 sets of farm trailers using the "strong-arm" powers of 11 U.S.C. § 544.  The second claim for relief objects to Bank's claim as authorized by Section 5.4.3.3 of the confirmed chapter 11 plan.  Bank answered

the amended complaint and filed a counterclaim on January 11, 2006.  The answer admitted this court's jurisdiction, that this court was the proper venue, and that this matter was a core proceeding.  It denied a sufficient portion of the amended complaint to keep the matter at issue.  The counterclaim set forth one claim for relief alleging unjust enrichment.  Trustee answered the counterclaim on January 24, 2006.

Trustee filed his first motion for partial summary judgment (D.C. No. GSMD-1) ("First Trustee SJ Request") on August 15, 2006 (Adv. Dkt. 20).  On September 12, 2006, Bank filed timely opposition to the First Trustee SJ Request and, by countermotion, the First Bank SJ Request.  After several continuances, the First Trustee SJ Request and the First Bank SJ Request came on for final hearings on November 7, 2006 at which time the matters were taken under submission.  By orders entered December 29, 2006, the court denied both the First Trustee SJ Request and the First Bank SJ Request.  As to the First Trustee SJ Request, the court concluded that Bank's evidentiary objections eliminated any evidence identifying the property that was the subject of the amended complaint.  As to the First Bank SJ Request, the court concluded that Bank had failed to provide sufficient independent evidence identifying the property at issue and showing that Bank was entitled to summary judgment.

On January 18, 2007, Bank filed the Bank Motion to Reconsider.  On February 7, 2007, Trustee filed opposition to the Bank Motion to Reconsider and also filed a countermotion, (D.C.

No. GSMD-2), again seeking partial summary adjudication ("Second Trustee SJ Request")(Adv. Dkt. 144). At a hearing on April 3, 2007, the court urged the parties to attempt to generate a stipulated statement of facts on which the court could rely in rendering a decision on the merits. The parties filed the Stipulated Facts on May 31, 2007. After one additional continuance for the parties to submit supplemental briefs addressing the effect of the Stipulated Facts, the Second Trustee SJ Request and the Bank Motion to Reconsider came on for a final hearing on June 19, 2007, at which time the matters were taken under submission.

## FACTS

AS noted above, on May 31, 2007, the parties filed the Stipulated Facts, which incorporate the contents of Schedules A and B attached as exhibits to the Stipulated Facts. The facts alleged in the Stipulated Facts are fully incorporated herein.

Prior to the Petition Date, Debtor and two related companies conducted an agricultural enterprise in the Central Valley of California. Grapeco, Inc., one of the related companies, filed its own chapter 11 petition on the Petition Date in the above-referenced Bankruptcy Court, commencing case no. 01-92889-A-7 (now designated case no. 04-32498-B-7). Capello, Inc., the other related company, also filed a chapter 11 petition on the Petition Date in said Bankruptcy Court, commencing case no. 01-92890-A-7 (now designated case no. 04-32499-B-7). The bankruptcy cases of

1   Grapeco, Inc. and Capello, Inc. have since been converted to

2   chapter 7 of the Bankruptcy Code, and chapter 7 trustees have

3   been appointed.

4        As of the Petition Date, Bank asserted a perfected security

5   interest in all of Debtor's personal property, including

6   equipment and vehicles, pursuant to a UCC-1 financing statement

7   filed in the California Secretary of State's office on April 9,

8   1992, and a UCC-2 continuation statement filed on November 19,

9   1996.

10       On February 11, 2007, the court approved a stipulation

11  between Bank and Trustee for relief from the automatic stay.  The

12  stipulation allowed Bank to foreclose on equipment collateral,

13  including "94 sets of good trailers and 24 sets of junk

14  trailers."

15       On March 3, 2004, Bank foreclosed on its equipment

16  collateral by private sale to Jennifer Hat, formerly known as

17  Jennifer Horan ("Horan") pursuant to an Asset Purchase Agreement

18  ("APA") dated March 3, 2004.  The APA identified the purchased

19  assets, including "94 sets good trailers and 24 sets good [sic]

20  trailers."  Bank sold to Horan, and she took physical possession

21  of, 216 individual trailers pursuant to the APA.  Two hundred

22  sixteen (216) individuals trailers (the "Trailers") are

23  identified in Schedule A attached to the Stipulated Facts.  (Adv.

24  Dkt. 194 at 6).  The registration status of each Trailer, i.e.

25  the date on which the last registration expired for each Trailer

26  prior to the Petition Date or the date on which Debtor last

27

28                              -6-

obtained a certificate of planned non-operation prior to the
Petition Date, is set forth on Schedule B to the Stipulated
Facts.  (Adv. Dkt. 194 at 16).

Each "set" of Trailers consists of two Trailers:  a semi
trailer with a single axle, to be attached to a truck, and a pull
trailer with two axles, to be attached to the semi trailer.  Each
Trailer has a flat bed to which open tanks that hold harvested
crops of grapes may be affixed.  No Trailer is equipped with
rollers on its bed.  The manufacturer and model years of the
Trailers vary.  Each Trailer, without load, weighs at least three
tons.  Each Trailer is capable of hauling, and, when properly
registered, did haul approximately 12 tons of grapes.  Therefore,
each of the Trailers, considering its own weight and its typical
load, would generally weigh in excess of 30,000 pounds when
loaded.  Each Trailer has a gross weight vehicle rating (meaning,
the maximum weight, with load, legally allowable for that vehicle
on public roads) in an amount in excess of 30,000 pounds.  The
Trailers are not capable of moving on their own, as they do not
contain motors, and are instead pulled by a truck.

The Trailers were used as part of the process of harvesting
grapes in the following manner.  Mechanical grape harvesters
picked the grapes from the vines.  The grape harvesters
transferred the picked grapes by conveyor belt to grape gondolas,
which had been brought into the fields.  When the gondolas were
filled, tractors would pull the gondolas to the Trailers, which
were located at either end of the field.  The Trailers would be

filled and were then moved on public roads to remote processing facilities.  These processing facilities included the Grapeco processing facility in Madera, California, and the Capello winery in McFarland, California.  In some cases the Trailers were moved for more than one hundred miles on public highways.

Debtor's harvest season generally included the months of August, September, and October.  Debtor's general practice was to register those trailers that the Debtor intended to use during the harvest season with the California Department of Motor Vehicles (the "DMV") on a partial-year basis.  Once the harvest season was over and the hauling of Debtor's crops was complete, Debtor would file certificates of planned non-operation for each trailer pursuant to California Vehicle Code Section 4604(a).  The DMV issued permanent trailer identification cards or registration cards for each Trailer after March 3, 2004, the date Bank and Horan entered into the APA.

Debtor did not file certificates of planned non-operation for the Trailers after the 1999 harvest.  Prior to the Petition Date, the DMV issued a certificate of ownership entitled "Certificate of Title" for each Trailer, containing the vehicle identification number, make and model year of the trailer, and the name and address of the registered owner and any legal owner. At no time was Bank ever listed as the legal owner or lienholder on any of the certificates of ownership for any of the Trailers.

## ANALYSIS

### JND-1: Issues

As to JND-1, the analysis first addresses whether reconsideration of the First Bank SJ Request is appropriate. Second, the analysis addresses whether and if so, to what extent the First Bank SJ Request should be granted.

### GSMD-2: Issues

As to GSMD-2, the analysis first addresses whether Trustee may seek partial summary judgment in this adversary proceeding a second time, the court having denied his first motion for partial summary judgment. Second, the analysis addresses whether Trustee may bring an independent motion for partial summary adjudication on the issues of perfection of Bank's security interest, and the avoidance of Bank's security interest, without addressing Bank's affirmative defenses. Third, the analysis addresses the merits of the issues of perfection and avoidance of Bank's security interest.

### JND-1: Reconsideration

Bank seeks reconsideration of the SJ Order which denied the First Bank SJ Request based on finding that the First Bank SJ Request lacked independent admissible evidence identifying the property at issue in this adversary proceeding. The Bank Motion to Reconsider requests that the court exercise its inherent equitable power to modify or vacate its own interlocutory order in the interest of justice. Smith v. Massachusetts, 543 U.S. 462, 125 S.Ct. 1129 (2005); A&A Sign Company, Inc. v. Maughan,

419 F.2d 1152, 1155 (9th Cir. 1969).  Such reconsideration is
appropriate where (1) there is newly discovered evidence, (2) the
court committed clear error, (3) the decision was manifestly
unjust, or (4) there is an intervening change in controlling law.
School District No. 1J, Multnomah County, Oregon v. A C and S,
Inc., 5 F.3d 1255, 1263 (9th Cir. 1993).  Bank argues that this
court committed clear error in finding that, because it sustained
Bank's objections to Trustee's evidence, no admissible evidence
of the identity of the property at issue was presented, and
neither the First Trustee SJ Request nor the First Bank SJ
Request could be granted.  The court agrees with Bank's
contention and therefore grants the request to reconsider the
First Bank SJ Request.

Bank correctly points out that a short excerpt from the
deposition of Horan contained in the voluminous exhibits to the
First Bank SJ Request properly authenticated Exhibit 9 to the
Horan deposition which consisted of the permanent trailer
registration cards for approximately 210 trailers.  The
deposition was itself properly authenticated by inclusion of the
reporter's certification.  Orr v. Bank of America, N.T & S.A.,
285 F.3d 764, 774 (9th Cir 2002).  Bank also provided a summary
prepared by counsel of the information contained in Exhibit 9.
The summary was attached to the notice of hearing on the First
Bank SJ Request.  The court did not see the summary during the
initial resolution of the First Bank SJ Request, primarily
because the court did not look at the notice of hearing for

-10-

1  evidence in support of the motion.  See Local Bankruptcy Rule

2  9014-1(d)(1) and the Revised Guidelines for Preparation of

3  Documents, ¶ (6)(a).

4      Considering the evidence detailed in the Bank Motion to

5  Reconsider, the court agrees that there was independent

6  admissible evidence filed with the First Bank SJ Request and that

7  the court's prior ruling concluding differently was clear error.

8  Based on this finding, the court holds that reconsideration is

9  appropriate in this circumstance and the Bank Motion to

10  Reconsider is granted to that extent.

11      **GSMD-1: Reconsideration of the First Bank SJ Request**

12      On reconsideration, the First Bank SJ Request is granted in

13  part and denied in part on the merits.  Bank is not entitled to

14  summary judgment because the court concludes that Bank has failed

15  to show that its security interest was perfected on the Petition

16  Date.  Instead, the law and facts show that Bank was not

17  perfected on the Petition Date.  The court declines in this

18  ruling to grant summary judgment to the Trustee on the first

19  claim for relief as the other elements of that claim are not at

20  issue in the First Bank SJ Request.  See Portsmouth Square, Inc.,

21  v. Shareholders Protective Committee, 770 F.2d 866, 869 (9th Cir.

22  1995)("[S]ua sponte summary judgment is appropriate where one

23  party moves for summary judgment and, after the hearing, it

24  appears from all the evidence presented that there is no genuine

25  issue of material fact and a non-moving party is entitled to

26  judgment as a matter of law.").  However, pursuant to

27

28                              -11-

1   Fed.R.Civ.P. 56(d), incorporated by Fed.R,Bankr.P. 7056, the
2   court concludes that the undisputed material facts show that
3   Trustee is entitled to "partial summary judgment," i.e. summary
4   adjudication, on the issue of perfection as of the Petition Date.
5   11 MOORE'S FEDERAL PRACTICE, § 56.40[2] (Matthew Bender 3d ed.
6   2007)("Because of the particular nature of the claims raised, a
7   court may also make a partial summary judgment ruling that
8   resolves issues of both law and fact.") citing Gillette v.
9   Delmore, 886 F.2d 1194, 1197-1199 (9th Cir. 1989).

10      Fed.R.Civ.P. 56, incorporated by Fed.R.Bankr.P. 7056,
11  provides that summary judgment is appropriate if the pleadings,
12  depositions, answers to interrogatories, admissions on file, and
13  declarations, if any, show that there is "no genuine issue of
14  fact and that the moving party is entitled to judgment as a
15  matter of law."

16      Bank filed the First Bank SJ Request on the first amended
17  complaint filed by Trustee on December 29, 2005 (Dkt. No. 8).
18  The first claim for relief in the first amended complaint seeks
19  to avoid an allegedly unperfected security interest in the
20  Trailers pursuant to the strong arm powers of 11 U.S.C. §§
21  544(a)(1) and (a)(2) and to recover the Trailers or their value.
22  The second claim for relief objects to Bank's claim under Section
23  5.4.3.3 of the confirmed chapter 11 plan.

24      Through the First Bank SJ Request, Bank seeks summary
25  judgment on the first claim for relief arguing that the security
26  interest in the Trailers was properly perfected as of the

27

28                                  -12-

Petition Date and is therefore unavoidable.  Were Bank to prevail on the first claim for relief, the second claim for relief would become moot.  Bank argues that summary judgment is appropriate because the undisputed facts before the court entitle Bank to judgment as a matter of law.  Although the court agrees that there are no disputes of material fact on this issue, particularly so after submission of the Stipulated Facts, Bank has not shown that it is entitled to judgment as a matter of law.  Therefore, summary judgment in favor of Bank on the First Bank SJ Request is denied.

The First Bank SJ Request did not seek to prove that Bank is entitled to judgment on each and every element of the first claim for relief.  Bank is not required to make such a showing.  Instead, if Bank can show that the Trustee cannot meet his burden of proving a single necessary element of the first claim for relief, then Bank will prevail.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-60 (1970).  In the First Bank SJ Request, Bank has chosen to focus solely on the issue of perfection of its security interest in the Trailers.  That issue is addressed below.

### GSMD-2: Trustee May Bring A Second Motion for Partial Summary Adjudication

In its opposition to the Second Trustee SJ Request, Bank argues that Trustee may not bring a second motion for a partial summary adjudication on the same grounds asserted in Trustee's first motion for a partial summary adjudication.  Bank asserts

-13-

that the Second Trustee SJ Request must be judged under the
standards for a motion for reconsideration.  Bank contends that
such reconsideration is only appropriate where (1) there is newly
discovered evidence, (2) the court committed clear error, (3) the
decision was manifestly unjust, or (4) there is an intervening
change in controlling law.  School District No. 1J, Multnomah
County, Oregon v. A C and S, Inc., 5 F.3d 1255, 1263 (9th Cir.
1993).  Bank argues that Trustee has not satisfied this standard.

     Without explicitly stating that the court's prior order
denying Trustee summary judgment is the "law of the case," Bank's
recitation of the standard for reconsideration nonetheless
impliedly asserts that the law of the case doctrine applies here.
To the extent that the law of the case doctrine is applicable,
however, it simply expresses a common judicial practice and does
not limit the court's power.  See Castro v. United States, 540
U.S. 375, 124 S. Ct. 786, 793 (2003).  Application of the law of
the case doctrine is discretionary and does not limit a court's
power to reconsider its own decisions prior to final judgment.
Arizona v. California, 460 U.S. 605, 103 S. Ct. 1382,
(1983)("Law of the case directs a court's discretion, it does not
limit the tribunal's power.").  The law of the case doctrine is
not discretionary only when the mandate of a higher court is
involved.  See City of Los Angeles v. Santa Monica BayKeeper, 254
F.3d 882, 888-89 (9th Cir. 2001)(law of the case doctrine does
not impinge on district court's power to reconsider its own

-14-

1  interlocutory order so long as that court has not been divested
2  of jurisdiction over order by commencement of appeal).

3      Furthermore, in the Ninth Circuit "[i]t is well-settled that
4  a denial of summary judgment does not establish law of the case
5  and does not preclude a second motion for summary judgment."
6  Hydranautics v. FilmTec Corp., 306 F. Supp. 2d 258, 968 (S.D.
7  Cal. 2003)(citing Shouse v. Ljungren, 792. F.2d 902, 904 (9th
8  Cir. 1986); Preaseau v. Prudential Ins. Co. of America, 591 F.2d
9  74, 79-80 (9th Cir.1979); Dessar v. Bank of America Nat. Trust
10  and Sav. Ass'n, 353 F.2d 468, 470 (9th Cir.1965); Beedy v.
11  Washington Water Power Co., 238 F.2d 123, 127 (9th Cir.1956);
12  Breeland v. Southern Pac. Co., 231 F.2d 576, 579 (9th Cir.1955);
13  Curran v. Kwon, 153 F.3d 481, 487 (7th Cir.1998)).  The court's
14  prior order denying the First Trustee SJ Request does not bind
15  this court's subsequent determinations.  Bank has cited no
16  authority, other than the general standard that governs motions
17  for reconsideration, that prohibits Trustee from bringing a
18  second motion.

19      In this instance the court finds that it is appropriate to
20  decide the merits of the Second Trustee SJ Request.  The court
21  previously felt unable to reach the merits of the First Trustee
22  SJ Request because of the perceived absence of admissible
23  evidence identifying the property at issue.  Now that the parties
24  have stipulated to facts and have developed the record more
25  fully, it is appropriate to reach the previously unaddressed
26  merits of the underlying legal issue.

27

28                              -15-

**GSMD-2: Partial Summary Adjudication by Independent Motion**

Bank also argues that Trustee cannot properly request partial summary judgment subject to remaining affirmative defenses that Bank may assert.  Bank construes the trustee's request as "seeking a determination of a single issue <u>encompassed</u> within a claim for relief or defense." (Adv. Dkt. 170 at 13) (emphasis in original).  Bank asserts that Trustee is only seeking the partial summary adjudication of a single discrete issue that is contained within his first claim for relief.  That issue, Bank asserts, is "the proper method by which one perfects a security interest in hauling trailers." (Adv. Dkt. 170 at 14). Bank argues that Trustee cannot obtain a partial summary adjudication on that issue by filing a motion that requests a determination as to that issue alone while reserving other issues related to liability or defenses for a later proceeding.  Bank argues that the Second Trustee SJ Request should be denied because it is procedurally improper.

The court disagrees with Bank's assertion that the Second Trustee SJ Request should be denied because it chiefly asks for resolution of one issue affecting the first claim for relief.[1] Furthermore, the court concludes that Trustee may seek partial summary adjudication by independent motion.  Rule 56(a) provides that a party seeking to recover upon a claim, counterclaim, or

---

[1] The court notes that Trustee also seeks a determination as to a second issue: whether he may avoid Bank's security interest. For reasons discussed below, that request is denied without prejudice.

-16-

cross-claim may after the expiration of twenty days after the commencement of the case, "move . . . for a summary judgment in the party's favor upon all <u>or any part thereof</u>." Fed.R.Civ.P. 56(a)(emphasis added).  Whether the phrase "any part thereof" permits adjudication of individual issues within a claim or defense is unclear.  Schwarzer, Tashima, and Wagstaffe in FEDERAL CIVIL PROCEDURE BEFORE TRIAL ¶ 14:40 (2007) collect cases that have allowed piecemeal disposition of issues. <u>See</u> <u>Barker v. Norman</u>, 651 F.2d 1107, 1123 (5th Cir. 1981)(noting that summary judgment may be proper as to some issues but not as to others); <u>Robi v.</u> <u>Five Platters, Inc.</u>, 918 F.2d 1439(9th Cir. 1990)(permitting summary adjudication of issues based on collateral estoppel effect of prior proceeding).  They have also collected cases that disapprove piecemeal disposition of issues. <u>See</u> <u>Arado v. General</u> <u>Fire Extinguisher Corp.</u>, 626 F.Supp 506, 509 (N.D. Ill. 1985)("[D]espite Rule 56(a)'s reference to 'all or any part' of a claim, the Rule authorizes only the granting of appealable 'judgments' disposing of entire claims."); <u>SEC v. Thrasher</u>, 152 F.Supp.2d 291, 295 (S.D.N.Y. 2001)(holding that "summary judgment is not a vehicle for fragmented adjudication of non-determinative issues").  To the extent that Rule 56(a) is read as permitting only the granting of a "judgment" as that term is used to stand for a final, appealable decision of the court, the court agrees with Bank.  Trustee cannot obtain a <u>judgment</u> on the first claim for relief without addressing Bank's affirmative defenses.

1   The nature of Trustee's request also prevents him from
2   obtaining the interlocutory summary judgment described in Rule
3   56(c).  Rule 56(c) provides that a summary judgment,
4   "interlocutory in character, may be rendered on the issue of
5   liability alone although there is a genuine issue as to the
6   amount of damages."  Fed.R.Civ.P. 56(c).  As a mechanism for
7   granting "partial summary judgment on [Trustee's] first claim for
8   relief, subject to" Bank's remaining affirmative defenses, Rule
9   56(c) is unavailable.  Bank has asserted affirmative defenses
10  that are directed at the issue of Bank's liability, including
11  waiver, estoppel, unclean hands, and consent.   Trustee cannot
12  obtain an interlocutory summary judgment under Rule 56(c) without
13  addressing these affirmative defenses.

14      However, Rule 56 does provide a mechanism by which Trustee
15  may obtain a determination in the form of an order of the court
16  which resolves a single issue that is part of the first claim for
17  relief.  Rule 56(d) provides that if a court does not render
18  judgment upon the whole case or for all relief requested, the
19  court shall if practicable ascertain what material facts are
20  disputed and undisputed and "make an order specifying the facts
21  that appear without substantial controversy, including the extent
22  to which the amount of damages or other relief is not in
23  controversy."  Fed.R.Civ.P. 56(d)(emphasis added).  "In rendering
24  a partial summary judgment ruling in favor of a movant, a court
25  need not provide relief completely dispositive of individual
26  claims that are part of a larger action.  A partial summary

28                              -18-

judgment ruling may dispose of only a single issue relevant to a claim."   11 James Wm. Moore, et al., MOORE'S FEDERAL PRACTICE § 56.40[2] (3ʳᵈ Ed. 2007).   Rule 56(d) allows a court to salvage some of the effort involved in ruling on a failed motion for summary judgment by resolving issues of law and fact for which a trial would not be necessary.   By issuing orders that resolve significant questions, the court can focus on the true matters in controversy.   Id. (collecting cases).   Although Professor Moore refers to the relief allowed by Rule 56(d) as "partial summary judgment," noting that it is now well-established that a court may "grant" partial summary "judgment," this court prefers the term "partial summary adjudication" as a means of distinguishing the relief permitted by Rule 56(d) from a final, appealable judgment.   See Id. at § 56.40[1].   Rule 56(d) permits the court to enter relief in the nature of what Trustee seeks: a determination as to a single issue of law based on the undisputed facts contained in the Stipulated Facts, without reaching the question of whether affirmative defenses apply.

The issue, then, is whether Trustee may obtain this relief by filing an independent motion seeking adjudication of a particular issue, rather than filing a motion for full summary judgment that addresses all elements of the claim and all affirmative defenses.   Bank argues that Rule 56(d) does not permit an independent motion.   The logical extension of this argument is that the court may make a determination under Rule 56(d) only after having been presented with a motion for full

summary judgment, having considered it, and having determined that it cannot be granted.

This argument is unpersuasive for two reasons.  First, the United States District Court for the Eastern District of California, through its Local Rules of Practice, permits independent motions under Rule 56(d).  Local Rule 56-260,[2] entitled "Motions for Summary Judgment <u>or Summary Adjudication</u>" (emphasis added), provides in subsection 56-620(f) that

> This Rule shall apply to <u>motions for orders</u> specifying material facts that appear without substantial controversy <u>pursuant to Fed. R. Civ. P. 56(d)</u>, except that the proposed "Statement of Undisputed Facts" and the "Statement of Disputed Facts" shall be limited to the facts that the moving party asserts are without substantial controversy and the facts the opposing party contends are in dispute.

L.R. 56-620(f)(2007)(emphasis added).

Second, in this instance, to require Trustee to file a motion seeking complete summary judgment or explicitly request full summary judgment in his motion before the court is able to enter a partial summary adjudication pursuant to Rule 56(d) would needlessly elevate form over substance and confound the policy underlying Rule 56(d).  The issue of perfection of Bank's security interest is potentially case dispositive.  Both the Bank Motion to Reconsider and the Second Trustee SJ Request, and the parties' efforts in reaching the Stipulated Facts are primarily

---

[2]  Local Rule 56-260 does not apply to this adversary proceeding because it is not incorporated by Local Bankruptcy Rule 1001-1(c).  However, the existence of this rule in the District Court highlights the flaw in Bank's argument.

-20-

1  directed toward resolving this issue.  Even if the adjudication
2  of this issue were not to result in the immediate disposition of
3  the case, significant time needed for trial would be saved.  The
4  partial summary adjudication requested by Trustee goes much
5  further than seeking the resolution of a merely evidentiary
6  matter en route to summary judgment, or seeking an adjudication
7  of an issue of fact which would not be dispositive of an issue or
8  even part of an issue.  Courts have recognized distinctions in
9  the type of issues that are to be resolved by partial summary
10 adjudication in determining whether a request for a partial
11 adjudication is proper.  See Barker, 651 F.2d at 1123 (noting
12 summary judgment may be proper as to some issues but not as to
13 others).  In addition, Ninth Circuit district courts have found
14 independent requests for partial summary adjudication to be
15 appropriate where the fact or issue to be adjudicated is
16 potentially case dispositive.  See Phase Four Industries, Inc. v.
17 Marathon Coach, Inc., 2005 WL 2676887 N.D.Cal. at *6 (October 20,
18 2005)("The efficacy of this approach is particularly suitable to
19 this case because the issue of priority of inventorship or
20 derivation is potentially case dispositive.");  Advanced
21 Semiconductor Materials America Inc. v. Applied Materials Inc.,
22 1995 WL 419747 (N.D. Cal. July 5, 1995)(concluding that
23 claimant's motion for partial summary judgment on a significant,
24 dispositive issue was proper);  Ajir v. Exxon Corporation, 1995
25 WL 261411, at *4 (N.D.Cal. May 2, 1995) (concluding that a motion
26 for partial summary judgment may properly be directed to only
27
28                                    -21-

part of a claim where summary adjudication of discrete theories
of liability helps focus issues and conserve judicial resources).

    For the foregoing reasons, Trustee may seek by independent
motion a partial summary adjudication as to the issues of
perfection of Bank's security interest and avoidance of Bank's
security interest.

**GSMD-1 and GSMD-2: Perfection of Bank's Security Interest**

    The perfection issue presented here depends on the interplay
between Division 9 of the California Commercial Code[3] and the
California Vehicle Code.  The court's analysis begins with the
Commercial Code.  "Except as otherwise provided in subdivisions
(c) and (d), this division applies to each of the following: (1)
A transaction, regardless of its form, that creates a security
interest in personal property or fixtures by contract...."  Cal.
Comm. Code. § 9109(a)(1) (West 2007).  It is undisputed that
Debtor granted Bank a security interest in the Trailers by
contract.  As noted above, the only issue is whether or not that
security interest was properly perfected.

    The general rule regarding perfection of security interests
in personal property is set forth in Commercial Code Section
9310.  "Except as otherwise provided in subdivision (b) and in
subdivision (b) of Section 9312, a financing statement must be
filed to perfect all security interests and agricultural liens."
Cal. Comm. Code § 9310(a) (West 2005).  Among the exceptions set

---

    [3] Unless otherwise noted, all references to Division 9 of
the California Commercial Code are to such Division as it was
revised and effective on July 1, 2001.

-22-

forth in Section 9310(b) is one incorporating Section 9311.  "The
filing of a financing statement is not necessary to perfect a
security interest that satisfies any of the following conditions:
... (3) It is a security interest in property subject to a
statute, regulation or treaty described in subdivision (a) of
section 9311." Cal. Comm. Code § 9310(b)(3) (West 2005).  Section
9311(a)(2)(A) is implicated under the facts of this adversary
proceeding.

> Except as otherwise provided in subdivision (d), the
> filing of a financing statement is not necessary <u>or</u>
> <u>effective</u> to perfect a security interest in property
> subject to any of the following:
>
> . . .
>
> (2)(A) The provisions of the Vehicle Code which require
> registration of a vehicle or boat.

Cal. Comm. Code § 9311(a)(2)(A) (West 2007)(Emphasis added).

The court notes that Section 9311 contains an exception in
Subsection (d), the application of which would obviate any need
to proceed further.

> (d) During any period in which collateral subject to a
> statute specified in paragraph (2) of subdivision (a)
> is inventory held for sale or lease by a person or
> leased by that person as lessor and that person is in
> the business of selling goods of that kind, this
> section does not apply to a security interest in that
> collateral created by that person.

Cal. Comm. Code § 9311(d)(West 2007).  The court concludes that
subdivision (d) does not apply to the facts of this case for two
reasons: (1) because the Trailers are not "inventory," and (2)
because the Debtor was not in the business of selling trailers.

Inventory is a defined term in the Commercial Code.

-23-

"Inventory" means goods, other than farm products,
which are any of the following:
(A) Leased by a person as a lessor.
(B) Held by a person for sale or lease or to be
furnished under a contract for service.
(C) Furnished by a person under a contract of service.
(D) Consist of raw materials, work in process, or
materials used or consumed in a business.

Cal. Comm. Code § 9102(48) (West 2007). None of these definitions applies to the Trailers. Debtor owned the Trailers for his own use to transport grapes from his various vineyards to various sites for processing.

Additionally, the Debtor was not in the business of selling farm trailers. He operated an agricultural enterprise in which his sole proprietorship Michael Hat Farming Company grew grapes throughout the San Joaquin Valley and elsewhere. Those grapes were sold both to Debtor's wholly owned corporations Grapeco, Inc., and Capello, Inc., and to third parties. Debtor used the Trailers seasonally to haul grapes from his fields to the processing facilities.

Because the Trailers were not "inventory," the holding of In re Babaeian Transportation Co., 206 B.R. 536, 543 (Bankr. C.D. Cal. 1997) is distinguishable. In Babaeian, the party giving the security interest in the taxi cabs was leasing the vehicles to the individual drivers. Thus the vehicles fell squarely within the ambit of Commercial Code Section 9102(48)(A), "goods...leased by a person as a lessor."

The court must therefore resolve the question of whether or not the Trailers are property "subject to the provisions of the Vehicle Code which require registration of a vehicle or boat."

-24-

1  If so, then the Vehicle Code governs perfection.  If not, then

2  the terms of the Commercial Code apply.  The answer to this

3  question is resolved by the express language in Sections 6300 and

4  6301 of the California Vehicle Code.

5      Bank focuses its argument on the use, or more particularly

6  the lack of use, of the Trailers on the Petition Date.  It argues

7  that the Trailers were not required to be registered, and

8  therefore were not "subject to the provisions of the Vehicle Code

9  which require registration of a vehicle," because they were not

10 being driven, moved or left standing on a highway or in any off-

11 street public parking facility as of the Petition Date.  Bank

12 points to language in California Vehicle Code Section 4000(a)(1)

13 which states that a vehicle must be registered to do any of the

14 foregoing.  Bank's argument incorrectly assumes that Section

15 4000(a)(1) sets forth the only requirements for registration of a

16 vehicle.  That is not the case.  Vehicle Code Sections 6300 and

17 6301 are also, in and of themselves, "provisions of the Vehicle

18 Code which require registration of a vehicle."  Both sections are

19 set forth fully below.

20          Except as provided in Sections 5905, 5907, and 5908, no
           security interest in any vehicle registered under this
21          code, irrespective of whether the registration was
           effected prior or subsequent to the creation of the
22          security interest, is perfected until the secured party
           or his or her successor or assignee has deposited,
23          either physically or by electronic transmission
           pursuant to Section 1801.1, with the department, at its
24          office in Sacramento, or at any other office as may be
           designated by the director, a properly endorsed
25          certificate of ownership to the vehicle subject to the
           security interest showing the secured party as legal
26          owner if the vehicle is then registered under this
           code, or, if the vehicle is not so registered, an

27

28                                  -25-

1   application in usual form for an original registration,
    together with an application for registration of the
2   secured party as legal owner, and upon payment of the
    fees as provided in this code.

3

4   Cal. Veh. Code § 6300 (West 2000 & Supp. 2006).

5       When the secured party, his or her successor, or his or
        her assignee, has deposited, either physically or by
        electronic transmission pursuant to Section 1801.1,
6       with the department a properly endorsed certificate of
        ownership showing the secured party as legal owner or
7       an application in usual form for an original
        registration, together with an application for
8       registration of the secured party as legal owner, the
        deposit constitutes perfection of the security interest
9       and the rights of all persons in the vehicle shall be
        subject to the provisions of the Uniform Commercial
10      Code, but the vehicle subject to the security interest
        shall be subject to a lien for services and materials
11      as provided in Chapter 6.5 (commencing with Section
        3068) of Title 14 of Part 4 of Division 3 of the Civil
12      Code.

13  Cal. Veh. Code § 6301 (West 2000 & Supp. 2006).

14      The statutes are not models of clarity as the language used

15  therein does not precisely mesh with that used in the Commercial

16  Code.  This is likely so because the two schemes were drafted

17  decades apart.  While the beginning of Section 6300 seems to make

18  it apply only to vehicles already registered, the Section goes on

19  to require the deposit with the DMV of a properly endorsed

20  Certificate of Ownership "showing the secured party as legal

21  owner if the vehicle is then registered..., or, if the vehicle is

22  not so registered, an application ...for an original

23  registration, together with an application for registration of

24  the secured party as legal owner,...."  Vehicle Code Section 6301

25  completes the scheme by stating that the deposit of the things

26

27

28                                  -26-

specified in Section 6300 "constitutes perfection of the security interest."

Thus, Vehicle Code Sections 6300 and 6301 contemplate the taking of a security interest in an unregistered vehicle and provide that perfection in that circumstance requires deposit with the DMV of (1) a properly endorsed Certificate of Ownership, (2) an application for an original registration and (3) an application for registration of the secured party as legal owner (not to mention the payment of all required fees).[4]

The first reference in Vehicle Code section 6300 to registered vehicles, when read in conjunction with the following clause "irrespective of whether the registration was effected prior or subsequent to the creation of the security interest" appears simply (1) to acknowledge that registration may occur only as a result of the creation of the security interest and the attempt to perfect it and (2) to negate the very argument being made by Bank - that section 6300 applies only to vehicles which are already registered.

---

[4] The court notes that nothing in the scheme embodied in Sections 6300 and 6301 requires regular renewals of registration after perfection in order for the security interest to remain perfected. The scheme only sets forth the method by which a secured party requests that the DMV to issue a certificate of title and a registration certificate showing that party as lienholder. Once the secured party is listed as lienholder on the certificate of title, its lien is perfected. Thereafter, a lapse in registration or the filing of a Certificate of Non-Operation does not affect the lienholder's perfected status because of the creditor's appearance on the certificate of title provides constructive notice of its lien. Babaeian Transportation Co., 206 B.R. at 542.

-27-

1       The Trailers are not "subject to the provisions of the

2   Vehicle Code which require registration of a vehicle" merely in

3   the sense that they are vehicles which must be registered

4   whenever the Vehicle Code says so.  They are "subject to the

5   provisions of the Vehicle Code which require registration of a

6   vehicle" because Bank took a security interest in them and wanted

7   to perfect that security interest.

8       None of the three exceptions contained in the first sentence

9   of Section 6300 applies here.  Vehicle Code Section 5905

10  addresses circumstances where a security interest is satisfied,

11  cancelled or released and a new security agreement is executed

12  within 10 days thereafter between the same parties.  In that

13  instance, the security interest is perfected on execution and the

14  formalities need not be performed.  Vehicle Code Section 5907

15  applies to vehicles constituting inventory.  As noted above, the

16  Trailers were not inventory.  Vehicle Code Section 5908 applies

17  to subsequent transfers of security interests previously

18  perfected under Section 6300.  The facts of this case fit into

19  none of the three exceptions.

20      This reading of Sections 6300 and 6301 also avoids the

21  absurdity of the logical extension of the Bank's argument.  In

22  the hypothetical put to the parties on more than one occasion,

23  the court posited facts that would result in the flipping back

24  and forth in perfection requirements depending on whether a

25  vehicle at any particular instant is being driven, moved or left

26  standing in a manner described in Vehicle Code section

27

28                              -28-

1  4000(a)(1).  The court's conclusion is instead consistent with
2  the common understanding of perfection of security interests in
3  vehicles - that the Vehicle Code controls perfection of security
4  interests in vehicles, except for one carve-out for vehicles held
5  as inventory, typically by an automobile dealer.

6       Meraz v. Farmer Insurance Exchange, 92 Cal.App.4th 321
7  (Cal.Ct.App. 2001), does not require a different result.  The
8  Meraz court considered a dispute over the proper interpretation
9  of language in an insurance policy.  Nowhere in Meraz was the
10  issue of perfection implicated because no security interest
11  existed in the van/tool shed.  Therefore, the state court was not
12  required to analyze the interplay between Vehicle Code Sections
13  6300 and 6301 and Commercial Code Section 9311(a)(2)(A).  It
14  simply analyzed those sections of the Vehicle Code that could
15  arguably be analogized to the facts presented in that case.  It
16  needed go no further than it did.  Meraz is not applicable to the
17  issue facing this court.

18     This court's interpretation of Sections 6300 and 6301 is
19  also consistent with precedent from the California Supreme Court.
20  In T & O Mobilehomes v. United California Bank, 40 Cal.3d 441,
21  709 P.2d 430, 220 Cal.Rptr. 627 (1985), the California Supreme
22  Court discussed extensively the interplay between the Commercial
23  Code and the Vehicle Code on the subject of perfection.  T & O
24  Mobilehomes is not dispositive here because it addressed a
25  different issue, holding that the "interest of a bona fide
26  purchaser of a vehicle subject to registration under the Vehicle

27

28                                -29-

1  Code prevails over a technically perfected security interest

2  which is not disclosed on the certificate of ownership."  <u>T & O</u>

3  <u>Mobilehomes</u>, 40 Cal.3d at 455.  However, the discussion therein

4  is relevant to this matter because in 1979, when the transactions

5  at issue in <u>T & O</u> occurred, mobilehomes were subject to

6  perfection under the Vehicle Code.  See <u>T & O Mobilehomes</u>, 40

7  Cal.3d at 447-48.

8      The following excerpt is reproduced at length to provide

9  sufficient context, both factual and temporal, for the discussion

10  in <u>T & O Mobilehomes</u>.

11      As previously noted, the UCC provides that a perfected
        security interest is generally effective against a
12      purchaser of the collateral. (See §§ 9201, 9301, subd.
        (1)(c), but see § 9307, subd. (1).) This rule is
13      premised upon the assumption that the filing of a
        financing statement with the Secretary of State will
14      permit prospective purchasers and encumbrancers to
        ascertain the existence of security interests in the
15      property by checking a centralized record system. In
        other words, the UCC's perfection system, like the
16      title recordation systems employed for real property,
        is based on constructive notice given through
17      recordation. (See Note, <u>Security Interests in Motor
        Vehicles Under the UCC: A New Chassis for Certificate</u>
18      <u>of Title Legislation</u> (1961) 70 Yale L.J. 995, 1005
        [hereafter <u>Security Interests in Motor Vehicles</u>].)
19
        By contrast, the special scheme employed for the
20      registration of security interests in motor vehicles
        relies primarily on <i>actual</i> notice to subsequent
21      purchasers through a certificate of ownership held by
        the seller. (See <u>Security Interests in Motor Vehicles</u>,
22      ibid.; <u>Comment, The California Used Car Dealer and the</u>
        <u>Foreign Lien - A Study in the Conflict of Laws</u> (1959)
23      47 Cal.L.Rev. 543, 546-547.)  Because this "full title"
        system requires all security interests to be listed on
24      the statutory certificate of ownership (see Veh. Code,
        §§ 370, 4451, 4453), a purchaser may rely on the
25      certificate and is not expected to check a centralized
        set of records to determine whether a security interest
26      has been recorded.[footnote]

27

28                              -30-

California adopted the full title system decades before the advent of the UCC, and the system remains essentially unchanged. The buyer's right to rely on the information on the certificate of ownership has been emphasized by our courts both before and after the enactment of the UCC. In First National Bank of Hays City v. Sprigg (1962) 209 Cal.App.2d 258 [25 Cal.Rptr. 838], decided one year before the enactment of the UCC, the court observed that "California is known as a 'full title' state insofar as registration of motor vehicles is concerned. This means that anyone transacting business with the owner of a motor vehicle can rely upon the title as reflected by the registration certificate, without further inquiry." (Id., at pp. 259-260.)

Ferraro v. Pacific Finance Corp. (1970) 8 Cal.App.3d 339 [87 Cal.Rptr. 226], decided seven years after adoption of the UCC, reached the same conclusion. "In California, as is well known to anyone engaged in the business of selling or lending money on the security of automobiles, a prospective purchaser of a motor vehicle without knowledge of any defect of title may rely exclusively on the information disclosed by the statutory certificate of ownership." (Id., at p. 346, fn. 1.)

Like full title statutes in other states, Vehicle Code section 6301 holds a purchaser to constructive notice of a security interest from the time the secured party's application for registration as legal owner is deposited with the DMV. (See Veh. Code, §§ 6301, 6302; Security Interests in Motor Vehicles, op. cit. supra, at p. 1005.) However, the purpose of this provision is primarily to establish priority among two or more competing lienholders according to time of receipt of the applications. (See ibid.) The deposit of the application is deemed to impart constructive notice only because it is assumed that the security interest will actually be recorded in the DMV's files. (See Eckhardt v. Morley (1934) 220 Cal. 229, 230-231 [30 P.2d 423].) In Eckhardt, this court construed the predecessor to Vehicle Code section 6301 to require actual registration before constructive notice would be deemed to date from the time of deposit. (Ibid.)

The same reasoning applies to the requirement for notation of the security interest on the certificate of ownership. Upon registration, the DMV is required to issue a new certificate of ownership to the legal owner listing the legal owner's name and address. (See Veh. Code, §§ 1800, subd. (a), 4450, 4451, 4453, 6302.)

1    Thus, it is assumed that the deposit of an application
      for registration will result in simultaneous
2    registration of the security interest and issuance of a
      new certificate of ownership listing the secured party
3    as the legal owner. The deposit should not be deemed to
      impart constructive notice to a buyer unless the
4    security interest has been accurately listed on the
      certificate of ownership.

5    T & O Mobilehomes v. United California Bank, 40 Cal.3d 441, 448-

6    51, 709 P.2d 430, 220 Cal.Rptr. 627 (1985).  The applicable

7    sections of both the Commercial Code and the Vehicle Code

8    referenced in T & O Mobilehomes are materially unchanged today.

9    T & O Mobilehomes applied pre- and post-UCC Commercial Code

10   Section 9302(3)(b).  The pre-UCC version provided:

11
12        "(3) The filing of a financing statement otherwise
          required by this division is not necessary or effective
          to perfect a security interest in property subject to
13        ... [P]  (b) The provisions of the Vehicle Code which
          require registration of a vehicle or boat; but during
14        any period in which collateral is inventory, the filing
          provisions of this division (Chapter 4) apply to a
15        security interest in that collateral ...."

16   See T & O Mobilehomes, 40 Cal.3d at 447 n.6.  (emphasis added)

17   (ellipsis in original).  The 1981 version of the statute

18   provided:

19        3) The filing of a financing statement otherwise
          required by this division is not necessary or effective
20        to perfect a security interest in property subject to
          ... (b) The provisions of the Vehicle Code which
21        require registration of a vehicle or boat, or
          provisions of the Health and Safety Code which require
22        registration of a mobilehome or commercial coach; but
          during any period in which collateral is inventory, the
23        filing provisions of this division (Chapter 4
          (commencing with Section 9401)) apply to a security
24        interest in that collateral.

25

26

27        .

28                              -32-

Cal. Comm. Code § 9302(3)(b) (West, Westlaw through 1981

legislation)(emphasis added).   The current version reads as

follows:

> Except as otherwise provided in subdivision (d), the
> filing of a financing statement is not necessary or
> effective to perfect a security interest in property
> subject to...(2)(A) <u>The provisions of the Vehicle Code
> which require registration of a vehicle or boat.</u>

Cal. Comm. Code § 9311(a)(2)(A)(West 2007)(emphasis added).

There are three non-material changes in the current version.

First, Division 9 was renumbered and the emphasized language has

been moved from Section 9302(3)(b) to Section 9311(a)(2)(A).

Second, the reference to the Health and Safety Code provision

regarding mobilehome perfection has been moved to Section

9311(a)(2)(B).   Third, the inventory exception has been moved to

Section 9311(d).   The emphasized language in each excerpt above

is identical in all three versions of the relevant section of the

Commercial Code.

Vehicle Code Section 6301 has seen even less alteration

since T & O Mobilehome.   The 1979 version of the statute read as

follows:

> When the secured party, his or her successor, or his or
> her assignee, has deposited with the department a
> properly endorsed certificate of ownership showing the
> secured party as legal owner or an application in usual
> form for an original registration, together with an
> application for registration of the secured party as
> legal owner, the deposit constitutes perfection of the
> security interest and the rights of all persons in the
> vehicle shall be subject to the provisions of the
> Uniform Commercial Code....

See T & O Mobilehome, 40 Cal.3d at 448.   The current version of

the statute reads as follows:

-33-

> When the secured party, his or her successor, or his or
> her assignee, has deposited, either physically or by
> electronic transmission pursuant to Section 1801.1,
> with the department a properly endorsed certificate of
> ownership showing the secured party as legal owner or
> an application in usual form for an original
> registration, together with an application for
> registration of the secured party as legal owner, the
> deposit constitutes perfection of the security interest
> and the rights of all persons in the vehicle shall be
> subject to the provisions of the Uniform Commercial
> Code....

Cal. Veh. Code § 6301 (West 2000 & Supp. 2006).  The only change

is the addition of a provision allowing electronic submission of

the documents required for perfection.

    T & O Mobilehome's conclusion that California is a full

title jurisdiction continues to be valid.  The Trailers became

"subject to the provisions of the Vehicle Code which require

registration of a vehicle" when Bank took a security interest in

them and wanted to perfect that interest.  Bank's security

interest in the Trailers was therefore unperfected as of the

Petition Date because Bank failed to comply with the perfection

requirements of Vehicle Code Sections 6300 and 6301.

### GSMD-2: Avoidance

    Having determined that Bank's security interest was

unperfected on the Petition Date, the court now turns to

Trustee's request for a determination that he can avoid Bank's

security interest pursuant to 11 U.S.C. § 544.

    The request for a determination of avoidability is denied.

The Second Trustee SJ Request asks for "summary judgment on the

first claim for relief, subject to any remaining affirmative

defenses that [Bank] can properly assert."  The ruling that

-34-

Trustee requests would leave undecided facts and issues relating to Bank's affirmative defenses.  Because Trustee has not established that none of Bank's affirmative defenses can bar recovery on the first claim for relief, Trustee is not presently entitled to a determination that he can avoid Bank's unperfected security interest.

## CONCLUSION

The Bank Motion to Reconsider is granted.  The court committed clear error in its initial ruling on the First Bank SJ Request and therefore the First Bank SJ Order is vacated.

On reconsideration, the First Bank SJ Request is granted in part and denied in part.  The provisions of the California Vehicle Code governed the perfection of Bank' security interest in the Trailers.  Because Bank failed to perfect its security interest under the provisions of the Vehicle Code, Bank's security interest in the Trailers was unperfected on the Petition Date.  Bank has failed to show in the First Bank SJ Request that it is entitled to judgment as a matter of law and summary judgment for Bank is therefore denied.  However, Trustee as non-moving party is entitled to an order setting forth the following partial summary adjudication: Bank's security interest in the Trailers was not perfected as of the Petition Date.

The Second Trustee SJ request is granted in part.  Trustee is entitled to an order setting forth the following partial summary adjudication: Bank's security interest in the Trailers was not perfected as of the Petition Date.

-35-

1     Except as set forth above, the above-captioned motions are

2 denied.

3     The court will issue separate orders.

4

5 Dated:   SEP -4 2007

6                                          Thomas C. Holman
                                           United States Bankruptcy Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                -36-

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United
States Bankruptcy Court for the Eastern District of California
hereby certifies that a copy of the document to which this
certificate is attached was mailed today to the following
entities listed at the address shown on the attached list or
shown below.

Merle C. Meyers            Robert B. Kaplan              Office of the U.S. Trustee
44 Montgomery St #1010     2 Embarcadero Center 5th Fl   501 I St #7-500
San Francisco, CA 94104    San Francisco, CA             Sacramento CA  95814
                           94111-3824

DATED:  9/4/07            By _____
                                      Deputy Clerk
                                  Jennifer Jahnsen

EDC 3-070 (New 4/21/00)